## WARREN et al. v. TINSLEY.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1893.)

### No. 47.

1. PROCEDURE—NOTICE OF HEARING.
An award made by arbitrators pursuant to Rev. St. Tex. arts. 46, 49, 50, is not binding when the arbitrators were not sworn prior to the hearing, and when no notice of a hearing had after the selection of a referee was given to one of the parties, and he was not present either in person or by representative.

2. SAME.
The failure to give notice of the hearing before the arbitrator, or to afford the parties any opportunity to be present, was a defect which will not readily be taken as waived by the conduct of the parties, especially when there is evidence which hinders the court from indulging presumptions wholly in favor of the award.

3. CONTRACTS—CONSTRUCTION.
Defendants executed an obligation for the payment of money conditioned to be void if the plaintiff realized out of the assets of a certain estate in his possession $7,000, or had an offer in writing of that sum which he refused. Contemporaneously with this contract, plaintiff, in writing, appointed a certain person his agent, "with power of attorney to sell said lands at minimum rates," and stipulated therein that he would not "cancel such appointment without appointing another agent with power of attorney to sell said lands," and notifying defendant of such appointment. *Held*, that under these contracts the agent had no authority to receive an offer of $7,000, and such offer could only be made to plaintiff in person.

4. SAME.
Under the terms of this contract, an offer of $7,000, accompanied by a demand for a warranty deed, was not a fulfillment of the condition, plaintiff having expressed his willingness to accept the same, and give a deed conveying such a title as he had received.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

In Equity. Suit by Thomas Tinsley against Henry M. Warren and others to foreclose a deed of trust to secure the payment of money. By a stipulation filed by the parties the controversy was submitted to arbitration in the manner provided by the Texas statute. The award of the arbitrators having been filed, plaintiff moved to set the same aside, which motion, after a hearing, was granted, and a decree entered in favor of plaintiff. A rehearing was subse-

quently denied, and thereupon defendants appealed to this court. Affirmed.

Statement by PARDEE, Circuit Judge:

This suit was instituted in the United States circuit court for the northern district of Texas, at Waco, on October 2, 1885, by Thomas Tinsley against Henry M. Warren, and the heirs of N. A. Warren, to wit, W. D. Warren, George Warren, Lillie Warren, Frank Warren, H. M. Warren, Jr., and Nellie Warren, upon the following described instrument, to wit:

"$500.00.                                                    Waco, March 7, 1881.

"Three years after date, we, or either of us, promise to pay to Thomas Tinsley, or his heirs, the sum of five hundred dollars, with 12 per cent. compound interest per annum from date, in consideration of a credit of like amount on our note now held by him, dated Februry 17, 1879; conditioned, however, that if the said Tinsley realizes the sum of seven thousand dollars, or has an offer or offers in writing amounting to said sum, which are made to and known by him, and refused, out of or through the property or other thing of value or assets acquired by him through the estate of John W. Warren, under his contract with H. M. Warren of this date, then this note shall be canceled and surrendered to us without payment. This note shall not be transferred by said Tinsley, and is made, by agreement between him and us, not transferable; and, in case this note has to be collected by suit, we agree to pay reasonable attorney's fees for said collection.

[Signed]                                                    "H. M. Warren.
                                                            "N. A. Warren."

This obligation was secured by a contemporaneous deed of trust in ordinary form upon 50 acres of land out of the J. M. Stevens league of land in McLennan county, duly executed by H. M. Warren and wife, N. A. Warren, and duly recorded, providing that, in default of payment of the obligation aforesaid, the trustee could sell the land, and pay the obligation, with interest, etc. The bill prayed foreclosure of the lien created by the deed of trust, the sale of the land, etc., alleging that the trustee declined to act, and negativing all the contingencies mentioned in the obligation, whereby it might become null and void. The complainant sues as an alien of the United States and a subject of the kingdom of Great Britain. The respondents are citizens of McLennan county, in the northern district of Texas. The heirs of N. A. Warren were minors, and appeared by Henry M. Warren, who represented them as guardian ad litem under order of the United States circuit court. The respondents filed answer under oath, alleging that they ought not to be held bound to pay the obligation aforesaid, because complainant failed to comply with the conditions thereof, in that complainant, being an alien, and for the most part of the time from the date to the maturity of said obligation being absent from McLennan county, Tex., where said obligation was executed, and where it was to be performed, placed it out of the power of respondents by his absence and his failure to notify respondents who his agent was to make the offer contemplated and expressly provided for by said instrument. It was further alleged that during the year 1882 complainant left the state of Texas without leaving any agent known to respondents, and while he was thus absent, and his whereabouts unknown, that respondents had two offers to sell for $7,000 cash the interest in the estate of John M. Warren, deceased, which complainant acquired under contract with respondent H. M. Warren aforesaid; the first offer being by one S. C. Coleman, who was a man of means, and fully able to comply with his offer; and that respondent H. M. Warren made diligent inquiry for complainant, or some agent representing him, and, failing to find the one or the other, said offer could not, on account of complainant's neglect, be made known to or refused by complainant or any agent representing him. And, further, that before said obligation matured, one Charles Reynolds, at the instance of respondent Warren, offered to pay complainant, Tinsley, in cash, $7,000 for the interest in the J. W. Warren estate acquired as aforesaid, and that complainant refused to receive the same, and that at such time said interest which complainant had bound himself to reconvey for $7,000 was reasonably worth $15,000.

It was further alleged that as a part of the contract and agreements between complainant and respondents, and contemporaneously therewith, complainant executed another paper, wherein he obligated himself as follows: "And the said Tinsley hereby appoints the said M. Surratt his agent at Waco, with power of attorney *to sell* said lands at minimum rates, and said Tinsley shall not cancel such appointment without first appointing another agent at Waco, with power of attorney to sell said lands, and notifying said Warren of same." It was alleged that, acting in bad faith, and in disregard of such agreement, Tinsley revoked Surratt's power, and appointed another agent, and failed, neglected, and refused to inform or in any way notify respondents thereof, and that complainant thereby put it out of the power of respondent Warren to make the offer provided for in the obligation aforesaid.

After the evidence was all taken and filed, the parties complainant and respondents filed an agreement on 23d October, 1890, to submit the matter to arbitration under the laws of the state of Texas, in which agreement W. M. Sleeper was selected by complainant, Tinsley, as his arbitrator, and respondents selected A. J. Caruthers as their arbitrator; and it was further agreed that there should be no appeal from the decision of the arbitrators and the umpire chosen by them if they failed to agree, but that such decision shall be final and absolute, and returned to, filed in, and made the basis of, the final judgment and decree of the United States circuit court at Waco. This was signed by the parties and filed, and afterwards there was a trial had before the arbitrators, when both parties were present, and the arbitrators failed to agree. Thereupon R. L. Monroe was finally selected as umpire, and on June 8, 1891, the arbitrators and umpire filed their award, finding in favor of respondents, and that complainant, Tinsley, pay all the costs of court.

On November 19, 1891, the complainant filed a motion to set aside the award on the grounds that (1) the arbitrators and umpire were not sworn, as required by said statutes; (2) there was no new hearing after the selection of umpire, as provided by said statute; (3) the complainant had no notice of the hearing before the umpire, and had no representative before him; (4) the arbitration was abandoned before an award; (5) the complainant was induced to agree to the said arbitration by reason of the threats of the defendant H. M. Warren. This motion was resisted by the defendants upon the ground that the complainant had waived all irregularities by reason of his participation in the proceedings, and they moved the court to enter judgment upon the award. The case was heard on April 12, 1892, and resulted in a decree setting aside the award and in favor of the complainant for the amount claimed, with foreclosure of the deed of trust and order of sale. The defendants made a motion for rehearing, which was overruled, and thereupon an appeal was taken, bond approved, and errors assigned, April 12, 1891.

D. A. Kelley, (Herring & Kelley, on the brief,) for appellants.

S. B. Hawkins, (Pearre & Boynton, on the brief,) for appellee.

Before PARDEE, Circuit Judge, and LOCKE, District Judge.

PARDEE, Circuit Judge, (after stating the facts.) The appellants contend in this court that they are entitled to a decree enforcing the award of the arbitrators, and, if this cannot be granted, then to a decree dismissing the bill upon the merits of the case. The written agreement to arbitrate provides that the submission and arbitration proceedings should be under the law in such case made and provided by the statutes of the state of Texas. The evidence in the case establishes that the arbitrators and the umpire were not sworn until after hearing and deciding the case; also that after the umpire was selected there was no notice given to the parties of any hearing, nor was there any hearing or rehearing had before the arbitrators and umpire; but, as stated by the umpire himself in his affidavit on file, "the arbitrators gave him 'the court papers' and

told him that 'they included all the evidence and depositions submitted to them,' and 'he then examined very carefully and thoroughly every paper in said case, including the said depositions, and, having arrived at a conclusion, reported to the said arbitrators that' he 'was ready to decide the case.'"

The Revised Statutes of the state of Texas bearing upon arbitration proceedings provide:

"Art. 46. On the assembling of the arbitrators on the day of trial, the justice of the peace or clerk shall administer an oath to each substantially as follows: 'You do solemnly swear that you will fairly and impartially decide the matter in dispute between the plaintiff and the defendants according to the evidence adduced and the law and equity applicable to the facts proved, so help you God.'"

"Art. 49. After hearing the evidence and arguments, if any, the arbitrators shall agree upon their award, and reduce the same to writing, specifying plainly their decisions, which award they shall file with the justice of the peace or clerk, as the case may be, and at the succeeding term of the court such award shall be entered and recorded as the judgment of the court with like effect of other judgments of such court, and upon which execution may issue as on ordinary judgments.

"Art. 50. If the arbitrators chosen as aforesaid cannot agree, they shall select an umpire with like qualifications as themselves, and he shall be sworn in like manner as the arbitrators, and the case may be tried anew at such time as the board of arbitrators thus constituted may designate, with like proceedings as are prescribed in the preceding article."

Under these statutes, the preliminary swearing of the arbitrators and umpire, and a rehearing and notice where the arbitrators disagree and an umpire is chosen, are plainly required. As to the requirement that the arbitrators shall be sworn before hearing the cause, see 6 Waite, Act. & Def. 622. In Falconer v. Montgomery, 4 Dall. 232, it is said by the court:

"The plainest dictates of natural justice must prescribe to every tribunal the law that 'no man shall be condemned unheard.' It is not merely an abstract rule or positive right, but it is the result of long experience, and of a wise attention to the feelings and dispositions of human nature. An artless narrative of facts, a natural and ardent course of reasoning, by the party himself, will sometimes have a wonderful effect upon a sound and generous mind, an effect which the cold and minute details of a reporter can neither produce nor supplant. Besides, there is scarcely a piece of written evidence, or a sentence of oral testimony, that is not susceptible of some explanation, or exposed to some contradiction; there is scarcely an argument that may not be elucidated, so as to insure success, or controverted, so as to prevent it. To exclude the party, therefore, from the opportunity of interposing in any of these modes (which the most candid and the most intelligent, but a disinterested, person may easily overlook) is not only a privation of his right, but an act of injustice to the umpire, whose mind might be materially influenced by such an interposition."

"The doctrine is well established that, where an arbitrator proceeds entirely ex parte, without giving the party against whom the award is made any notice of the proceeding under the submission, the award is void, and it is not necessary to show corruption on the part of the arbitrator. Elmendorf v. Harris, 23 Wend. 628; Lutz v. Linthicum, 8 Pet. 178, and authorities there cited." Ingraham v. Whitmore, 75 Ill. 24. Ingraham v. Whitmore is approved, and the same rule is applied, where an umpire was called in on disagreement of the arbitrators, in Alexander v. Cunningham, 111 Ill. 511. "An arbitrator

greatly errs if he in any—the minutest—particular takes upon himself to listen to evidence behind the back of any of the parties to the submission." Drew v. Leburn, 2 Macq. H. L. Cas. 1. "No custom or usage can justify an arbitrator or umpire in deciding on evidence laid before him without the knowledge of the party against whom he decides, and without giving him an opportunity of being heard. In re Brook, 16 C. B. (N. S.) 403, 10 Jur. (N. S.) 704, 33 Law J. C. P. 246, 10 Law T. (N. S.) 378." 1 Jac. Fish. Dig. 371. The cases of McHugh v. Peck, 29 Tex. 141, and Forshey v. Railway Co., 16 Tex. 529, relied upon by the appellant as showing a contrary doctrine, were rendered prior to article 50, Rev. St. Tex., under a statute then in force, which reads as follows: "But, if the arbitrators chosen as aforesaid cannot agree, the arbitrators shall select an umpire, and, in case they disagree in the choice of an umpire, the justice of the peace or clerk may appoint an umpire, who shall be competent to serve as an arbitrator, and who shall in like manner be sworn." Pasch. Dig. art. 65,—which, it is seen, does not contain the provision, "And the case may be tried anew at such time as the board of arbitrators thus constituted may designate, with like proceedings as are prescribed in the preceding article," forming an essential part of article 50, Rev. St. Tex., in force at the time of the submission in this case.

The appellants contend that irregularities may be waived by the action of the parties to the submission, and cite numerous authorities as to the proposition that arbitrations are favored in the courts, and that the findings of arbitrators are treated as the verdicts of juries, to all of which we give our assent. In this view, there may be some reason for holding that the failure to swear the arbitrators in accordance with the statute was waived, but, in our opinion, the failure to give a hearing to the parties cannot, under the circumstances, be taken as waived. Besides, it may be noticed that there is evidence in the case—conflicting, it is true —which should hinder the court from indulging in presumptions wholly in favor of the award. The defense on the merits is based on the amended original answer of the defendants to the effect—

"That on the same day, to wit, 7th day of March, 1881, that the writing obligatory sued on was executed, there was also executed as a part of the same transaction another instrument of writing, contract and agreement, a certified copy of which is attached to the deposition of M. Surratt marked 'Exhibit A,' filed herein 10th of October, 1888, which for certainty is referred to and made part of this amended pleading, wherein, among other things, after substantially describing said writing obligatory sued on, it is expressly provided as follows: 'And said Tinsley hereby appoints the said M. Surratt his agent at Waco, with power of attorney to sell said lands at minimum rates, and said Tinsley shall not cancel such appointment without first appointing another agent at Waco, with like power of attorney to sell said lands, and notifying said Warren of same.' It is averred that said Tinsley did cancel said appointment of M. Surratt without first appointing another agent at Waco with power of attorney to sell said lands, and notifying said Warren of the same, and that he thereby put it out of the power of said Warren to make the offer provided in said writing obligatory; that the same was a condition precedent to Warren's liability hereon; ⬤ that, by its breach by Tinsley, Warren was exempted from any and all liability, and said writing obligatory became null and void."

In the contemporaneous agreement referred to, Tinsley, at Warren's instance, agreed to furnish $1,500 to M. Surratt as trustee, with power to buy up one third of the lands belonging to the estate of J. W. Warren, deceased, and to take the title in Tinsley's name; and at the same time Tinsley agreed to put a credit of $500 on an obligation held by him against Henry M. Warren and wife, for which $500 credit the note sued upon was executed, it being specified in said agreement in relation to the matter in hand, as follows:

"That the said Warren and wife shall execute to him their joint note for that amount, due three years after date, with 12 per cent. compound interest per annum from date, conditioned that if the said Tinsley realizes the said sum of $7,000, or has an offer or offers in writing amounting to said sum, 'which are made to him, and which are known by him and refused,' out of or for the property, causes of action, or other thing of value obtained by him out of or through said estate within three years from the date of said note, then the same shall be canceled by him, and surrendered to said Warren without payment, which said note shall be made payable to said Tinsley or his heirs, and shall not be transferable; said note to be secured by a deed of trust executed by said Warren and his wife on fifty acres of land near Waco, and part of their home tract of land, not including their homestead; and said Tinsley hereby appoints the said M. Surratt his agent at Waco, with power of attorney to sell said lands at minimum rates, and said Tinsley shall not cancel such appointment without first appointing another agent at Waco, with power of attorney to sell said lands, and notifying said Warren of same."

The evidence shows that, in the spring of 1882, Tinsley withdrew his power of attorney from said Surratt, appointing, as he says, another agent at the same place, with the same powers, but giving no notice thereof to Warren; that after the said withdrawal Warren went to Surratt, and told him that he had a purchaser at the sum of $7,000 for Tinsley's lands, obtained from the J. W. Warren estate; that the purchaser would give $7,000 for the lands, and was prepared to make the offer in writing. The defendant Warren testifies that he received the offer from a Mr. Coleman in 1882 or 1883, who was ready to pay the money, and wanted to buy the property at $7,000. Mr. Surratt testifies that Mr. Warren came to him, (time not specified,) and told him that he had a purchaser for Tinsley's lands obtained through the John W. Warren estate, at the sum of $7,000; that is, that the purchaser would give $7,000 for the said lands, and was prepared to make the offer in writing. "I then informed him that Mr. Tinsley had revoked my power of attorney, and that I couldn't receive the offer in writing, nor otherwise. Mr. Warren then and there asked me who was Mr. Tinsley's agent, * * * and said that by his understanding of the contract Mr. Tinsley was obligated not to revoke my agency without notifying him [Mr. Warren] of the appointment of another agent. Mr. Warren said, in substance, that he wished to have the seven thousand dollars offered made in writing to Mr. Tinsley, to save his rights under the contract, and now that he had the purchaser, insisted upon offering it to me, because he knew of no other agent of Mr. Tinsley."

In our opinion, the contract referred to does not contemplate that, in case a purchaser of the interest in the J. W. Warren lands should be found by Henry M. Warren, the offer or offers in writing, "amount-

ing to said sum," were to be made to any other person than to Mr. Tinsley in person. The language in the contract in relation to said offer or offers is "which are made to him, and which are known by him and refused," and the same is emphasized by being placed in quotation marks. The provision with regard to the appointment of an agent seems to relate entirely to the sale of lands at minimum rates, and not refer to any understanding that action upon the $7,000 offer should be within the scope of the agency. This not only appears from the contract itself, but is shown to have been the contemporaneous construction given by the parties; for, in the power of attorney executed by Tinsley to Surratt, drawn up by Surratt, who drew the other contracts between Tinsley and Warren, the power given to the agent is as follows:

"For me and in my name to sell and convey, jointly with the remaining owners, giving. if he assist in the guaranty of title, to the extent of the purchase money, an interest in all or any portion of my right, title, and interest in the following lands situated in Texas, at such prices as the other joint owners may sell their interest therein, provided such prices be not less than those hereinafter named, to wit, [then follows a description of the lands and prices:] also to make the joint deeds with the remaining joint owners of the aforesaid lands to any part of the particular survey they may decide to cede or give as a compromise to adverse claimants of the same; to acquire title, also, to redeem the aforesaid lands from tax sales; and I hereby ratify and confirm each and every act and deed of my attorney in and by him done, and in accordance with the aforesaid conditions of this instrument, and make them as binding on me as if done by me in my own proper person."

### The complainant, Tinsley, testifies:

"The object of my having an agent at Waco was not for the purpose of receiving an offer of seven thousand dollars for my interest in the Warren lands, as my contract with Warren stipulated that such an offer should be made to me direct in writing, but it was for the purpose of redeeming lands from tax sales, etc. My power of attorney to Marshal Surratt, prepared by him at the time, shows this very plainly. None of my agents had authority from me to receive offers for me of seven thousand dollars for the entire lands. They were tied down to certain fixed minimum rates for each particular tract. * * * They could only sell each tract separately and jointly with the other owners, at fixed rates."

### He further testifies, in answer to a cross interrogatory:

"I have not attached the original contract of March 7, 1881, asked for, because I don't wish to part with it. It will, however, be produced in court by my solicitors in the trial of the cause. By reference to the original contract and that clause relating to the note in question. it will be noticed that the words 'in writing' are underlined, and were inserted afterwards. I refused to sign the contract unless the words 'in writing' were inserted. I wished to avoid disputes and contentions. It will also be noticed that that part of the clause permitting the offer of seven thousand dollars to my agent was stricken out. This was done at my special request. and I refused to sign the contract until these alterations were made."

This testimony of Tinsley is not disputed by the defendants, nor does it appear that they called for the production of the original contract which, as Tinsley says, would show that a provision in the original writing permitting the offer of $7,000 to be made to Tinsley's agent was stricken out before the contract was signed.

As a further defense on the merits, the defendants urge that, before the maturity of the writing obligatory sued on, one Charles

Reynolds, at the instance and request of defendant Warren, offered to pay to complainant in cash $7,000 for his acquired interest in the lands belonging to the estate of J. W. Warren, and which complainant obligated and bound himself to receive under his contract with H. M. Warren of even date with said writing obligatory, and that complainant refused to receive the same.

In regard to this defense, Warren testifies:

"Tinsley refused to take the offer of Charles Reynolds, because Reynolds wanted him [Tinsley] to give him a warranty deed to the lands, and he [Tinsley] said he would not give a warranty deed to any of the lands. Reynolds offered to leave out of the warranty the lands which were in dispute, but Tinsley declined to give a warranty to any of the property."

Reynolds testifies:

"I know of but one offer that was made to Mr. Tinsley. That was one I made him myself; for, some time in the year 1885, I offered him seven thousand dollars cash for the property. * * * Mr. Tinsley said he would take it. I wanted him to give me a warranty deed to the lands, but he declined to do that, and said he would only sell what title he had to the lands. I then offered to take that if he would give me a warranty to such lands as were not in dispute as to title. This he refused also. Then I declined to take them, unless he would give me such warranty."

Tinsley testifies:

"I accepted Reynolds' offer of $7,000, but he refused to pay it unless I would give him my general warranty deed to more lands than I had acquired. I refused to give any other kind of deed than that which had been given me, which was a special warranty deed. I explained the matter fully to both Reynolds and Warren,—that I could not give a general warranty deed to lands I did not acquire or own. Henry Warren then suggested that I should give Reynolds a general warranty deed to part of the lands, and special warranty deed to the balance. This I declined to do, because the lands had not been deeded to me in that way, and I did not feel called upon to give any other title than that which I had acquired. I told Warren at the time that I did not consider Reynolds' offer of $7,000 to be in accordance with our agreement, because, in the first place, it was not in writing. In the next place, he demanded a different kind of deed or title than that which I had acquired. He demanded my general warranty deed, while I had acquired only a special warranty deed to such interest as the estate of Warren possessed."

Under the contract between Tinsley and Warren, in relation to the offers to be made for the lands acquired from the estate of J. W. Warren, the condition attached to the writing obligatory sued upon was as follows:

"That if the said Tinsley realizes the sum of seven thousand dollars, or has an offer or offers in writing amounting to said sum, and 'which are made to him, and which are known by him and refused,' out of or for the property, causes of action, or other thing of value obtained by him out of or through said estate within three years from the date of said note, then the same shall be canceled by him, and surrendered to said Warren without payment."

The evidence of the three parties interested seems to be in accord with regard to the refusal of Tinsley to accept Reynolds' offer, and that it was because Tinsley refused to give a warranty deed to all or any of the lands in question, although he was willing and offered to give a deed transferring just such title as he had acquired. Under a fair construction of the contract as quoted, it is clear that Tinsley was not bound to the acceptance of any offer to be

made thereunder to give to the proposed purchaser of his rights in the Warren estate any other or better title than he had himself acquired.

On the whole case, we are of the opinion that the award was not binding upon complainant, was properly set aside in the circuit court, and that neither of the defenses attempted to be made has any merit. It follows that the decree appealed from should be affirmed, and it is so ordered.

McCORMICK, Circuit Judge, took no part in the decision of this case.