SELDNER CORPORATION v. W. R. GRACE & CO.

No. 6213.

District Court, D. Maryland.

Feb. 23, 1938.

Niles, Barton, Morrow & Yost (by Geo. S. Yost), of Baltimore, Md., for plaintiff.

Ritchie, Janney, Ober & Williams, of Baltimore, Md., and Howard N. Deyo, of New York City, for defendant.

CHESNUT, District Judge.

The question that has been now submitted for decision in this case is whether an award of arbitrators should be confirmed or set aside. The question arises in the following way:

On March 17, 1937, the plaintiff, The Seldner Corporation, a Maryland corporation engaged in Baltimore City in manufacturing cotton batting and mattresses, entered into a written contract with the defendant, W. R. Grace & Company, a New York corporation, whereby the latter sold to the plaintiff 500 bales of Japanese Fly Waste (cotton waste) described to be "equal to buyer's type in seller's possession." "Disputes, if any, to be settled amicably. In the event an amicable settlement cannot be reached, arbitration to be held in Baltimore." Shipment was to be made from Japan for 150 bales in April; 150 bales in May; and 200 bales in June 1937, payment to be made upon presentation of shipping documents under c.i.f. contract. As the documents for the several shipments respectively arrived they were taken up and paid for by the plaintiff as purchaser, but on inspection of the goods themselves the deliveries were rejected as not in accordance with the contract sample. Grace and Company then demanded arbitration under the contract, and an award of the arbitrators unfavorable to the plaintiff was made on September 27, 1937, which Seldner considered to be invalid for reasons hereinafter stated; and thereafter on October 15, 1937, it instituted suit in the Superior Court of Baltimore City to recover the sum of $14,-094.64, with interest, which the plaintiff had paid to the defendant under the contract. The suit was begun by the customary Maryland procedure known as "Foreign Attachment" against the defendant as a non-resident, with levy on the 500 bales of Japanese Fly Waste in storage in Baltimore. The defendant then entered its appearance in the case and had it removed to this court for trial. Here it pleaded the general issue pleas and a special plea setting up the award of the arbitrators, to which plea the plaintiff filed a replication alleging the invalidity of the award. Thereupon the defendant filed a motion in this court to stay the trial of the case and to confirm the award of the arbitrators; and in answer thereto the plaintiff filed a motion to vacate and set aside the award.

The ruling now to be made arises on these motions. Counsel for both parties have acted on the assumption that the procedure is in accordance with the United States Arbitration Act, § 1 et seq., U.S.C. title 9, §§ 1 to 15, and particularly sections 9 to 13, both inclusive, which relate to the confirmation, vacation or modification of awards and the procedure thereon. A close reading of the whole Act suggests some doubt as to whether it is precisely applicable to the present case.

Sections 2 to 8, inclusive, of the act, 9 U.S.C.A. §§ 2–8, deal with situations where an arbitration, though agreed to, has *not* been held; and sections 9 to 13, inclusive, 9 U.S.C.A. §§ 9–13, relate to cases where, as here, the arbitration *has been held* and an award has been made, and regulate the procedure for confirmation, modification or vacation of such award. Section 9 provides:

"§ 9. *Award of arbitrators; confirmation; jurisdiction; procedure.* If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made."

It will be noted that the procedure for *confirmation* of an award is expressly conditioned upon the inclusion in the arbitration agreement of a stipulation "that a judgment of the Court shall be entered upon the award," which the contract in this case did not include. See Lehigh Structural Steel Co. v. Rust Engineering Co., 61 App. D.C. 224, 59 F.2d 1038; In re Thurston, 2 Cir., 48 F.2d 578, 580. It is at least arguable that the subsequent sections dealing with vacation and modification of awards were intended to be dependent on section 9,

and only applicable where an award has been made in a case within its provisions; as it would seem somewhat anomalous to limit confirmations of awards to arbitration agreements providing for judgments on awards, but extend modification and vacation to all awards. A more symmetrical construction would confine the operation of sections 10 and 11 (relating to vacation and modification) to defensive use against awards which could otherwise be confirmed under section 9, as therein indicated. It may also be questioned whether there is venue jurisdiction here in view of the provision in section 9 that the proceeding for confirmation is to be in the "United States court in and for the district within which such award was made"; because the award in this case was actually made in New York (by subsequent agreement of the parties) although the contract provided for arbitration in Baltimore. But the latter objection probably could be, and in this case doubtless has been, waived.

However, it is not necessary to decide whether the United States Arbitration Act is applicable, because, under the facts presently to be stated, the result would be the same whether it or common law principles affecting arbitration and award affords the rule of decision. The court has general jurisdiction of the case on the ground of diversity of citizenship and amount involved. U.S.C. title 28, § 41(1), 28 U.S.C.A. § 41(1). The only importance of the point is with regard to the procedure. If the Act applies, the issue of the validity of the award may properly be disposed of on the motions of the parties; while if it does not apply, the question would properly be deferred until the main jury trial of the case upon the pleadings; and even this would seem to be not vitally important as the controlling facts are really undisputed, and the submission of the controversy by the parties to the court may be taken as a waiver of a jury trial on the particular issue.

The contract provision for arbitration above quoted, was in the most general terms and did not prescribe the method of procedure therefor; but by correspondence the parties agreed, for the convenience of the arbitrators, that the arbitration should be held in New York instead of Baltimore; that each party should appoint one arbitrator, and if they failed to agree, a third arbitrator should be selected by them who should decide their differences. The plaintiff selected Mr. John Ryan and the defendant Mr. Benjamin Adler as their respective arbitrators, and they named as the third arbitrator Mr. T. B. O'Brien; all three of the arbitrators being engaged in the business of buying and selling cotton waste and having places of business in New York. Grace & Company proposed that three questions be submitted to the arbitrators as follows:

1. Is the quality off?

2. If the quality is off, have you (the buyer) the right to reject?

3. If the quality is off and you (the buyer) have not the right to reject, what allowance should you (the buyer) be entitled to?

Seldner at first objected to any question being submitted to the arbitrators except the first, asserting that if the quality was off (as compared with the contract sample) then it had the unconditional right to reject; but finally assented to the submission of the three questions to the arbitrators. The parties agreed upon the arbitration and the arbitrators were appointed before the arrival of the third instalment, of 200 bales; but after it had arrived and had been inspected and rejected by Seldner, the latter suggested that the arbitration should cover it also, and this was assented to by Grace & Company.

The arbitrators met on September 27, 1937, in New York City, and by their decision on that day made an award signed by all three, by which they determined that the first shipment of 150 bales was "off" quality but not off quality sufficiently to be rejected outright, and an allowance of 30 cents per c.w.t. was granted. On the second shipment of 150 bales, "it was found that these were also slightly off quality and an allowance of 15 cents per c.w.t. was granted." On the remaining 200 bales "it was found that these were a good delivery against the sales type." The award stated, in answer to the second question submitted, which was, if the quality was off had Seldner the right to reject, "No. Since the quality of the first 150 bales was the most inferior of the three deliveries, it was the opinion of the umpire, called in this matter, that even the material tendered in this delivery, as against the selling sample, was of kind and nature and an outright rejection was unjustified." The allowance made by the award amounted to $328.01 which sum, plus a further weight adjustment of $2.03, was tendered by defendant to the plaintiff but

rejected, and was subsequently paid into court by the defendant.

At the hearing upon the respective motions for confirmation and setting aside of the award, the evidence consisted of the correspondence between the parties and some other exhibits attached to the respective motions, and the testimony of the plaintiff's president and of the three arbitrators. On all the evidence the plaintiff contends that the award should be set aside for three reasons: (1) That the arbitration was held without any notice to it of the time and place of the hearing and without any opportunity to be present at the hearing; (2) that the award of the arbitrators amounted to a mistake in law in that while they decided the first two shipments·were not equal to the samples, they nevertheless (inconsistently) decided that the plaintiff did not have the right to reject the shipments; and (3) that the arbitrators exceeded their authority in passing upon the third shipment.

With respect to these contentions the evidence established without contradiction that the plaintiff did by letters of September 20 and 27, 1937, expressly request that it be given notice of the time of meeting of the arbitrators so that its president could "appear in person and present our case in addition to the papers which I shall prepare as requested." This request was made by the plaintiff's president in a letter to Mr. Ryan (the arbitrator appointed by the plaintiff) and was submitted by him to the other arbitrators when they met on September 27th to consider the case and make the award. But despite this request the arbitrators proceeded to consider and decide the matter without notice to the plaintiff and without giving it an opportunity to be represented or heard. Their reason for this seems to have been that they thought it unnecessary to hear the plaintiff as they had the contract samples and the inspection samples of the deliveries, and also correspondence between the parties. As one witness put the matter, the arbitrators thought the presence of the parties would unnecessarily "complicate" the matter.

While the plaintiff had itself suggested that the arbitration should include the third shipment of 200 bales, it had evidently not anticipated that the arbitration would proceed without an opportunity on its part to submit adequate samples of the third shipment. In consequence, as to this third shipment, the arbitrators had before them substantial samples taken by a representative of the defendant, of considerable size in bulk, but only a very small sample which the plaintiff had sent in an envelope to his arbitrator some time before. When the plaintiff's president learned that the award had been made without notice to him of the meeting of the arbitrators he at once asked a rehearing, which they were willing to grant subject to the consent of the defendant, which however refused its assent.

On these facts I am of the opinion that the award must be set aside, on the ground that it was the duty of the arbitrators to notify the parties of the time and place of holding the arbitration, and to give them a hearing with opportunity for submission of any relevant evidence to support their respective contentions; and their failure to do so constituted what in law amounted to misconduct or misbehavior to the prejudice of the plaintiff on common law principles, and also within the meaning of sections 10 (c) and (d) of the United States Arbitration Act, 9 U.S.C.A. § 10(c, d) which provide that an award may be vacated—

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

There is apparently no prior decision determining the sufficiency of "lack of notice and opportunity to be heard" as grounds for the vacation of an award, under section 10 of the act; but the applicable common law is uniformly well settled, and there is no indication that the Act was intended to effect any change therein, at least so far as it affects this case. The Act has been held constitutional and has been applied in the stay of suits pending arbitration, and the confirmation or vacation of awards in a number of cases, for a variety of reasons. See Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282; Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004; The Hartbridge, 2 Cir., 62 F.2d 72; American Guaranty Co. v. Caldwell, 9 Cir., 72 F. 2d 209; La Nacional Platanera v. North

392

American Fruit & S. S. Corp., 5 Cir., 84 F. 2d 881; In re Utility Oil Corp., 2 Cir., 69 F.2d 524; The Guldborg, D.C.N.Y., 1 F. Supp. 380.

■ The function of arbitrators is judicial in nature. It is a basic concept of English and American jurisprudence that all judicial proceedings affecting the rights and obligations of persons and corporations are conditioned on notice and opportunity to be heard. And this fundamental rule has been uniformly applied to arbitration. It is well summarized in 3 American Jurisprudence, Arbitration and Award, § 102, p. 929, as follows:

"102. *Right of Parties to be Heard.*— Where no statute provides otherwise, and where nothing to the contrary appears from the agreement of the parties, it is a universally recognized rule that the parties to an arbitration proceeding have an absolute right to be heard and to present evidence before the arbitrators. It follows that it is the duty of the arbitrators, within a reasonable time after their appointment, to hold a meeting for the purpose of inquiring into the merits of the controversy which has been submitted to them, and of giving the parties an opportunity to present their case. If they undertake to decide the controversy without holding a meeting and without hearing the evidence produced by the parties, their award will be invalid. It is immaterial in such a case that the arbitrators did not intend to act corruptly, but merely mistook their duty in that respect; the want of an opportunity to be heard goes directly to the authority of the arbitrators to make an award. The same rules apply with respect to a rehearing before an umpire.

"The right of a party to be heard may, of course, be relinquished or waived, the same as any other personal right. A refusal by a party to attend a meeting when notified by the arbitrator is held to be a waiver. Obviously, if a party having a fair opportunity to do so fails to offer any evidence, he cannot later complain that he was not heard by the arbitrators.

"An exception to the rule stated above in regard to holding meetings and hearing evidence is recognized in those cases in which the character of the matter submitted and of the arbitrators chosen is such as to justify an inference that they were selected to act as experts and to adjudge the matter from their own knowledge. Here it is not essential that evidence shall have been heard unless the submission so provides. In the absence of such a provision in the submission, a refusal to receive testimony is not ground for setting aside the award. It will be observed that under such circumstances, the proceeding is likely to be more in the nature of an appraisement than an arbitration, and the functions of the arbiters are usually those merely of appraisers or of quasi-arbitrators."

Other texts state the law in substantially the same way. 6 C.J.S., Arbitration and Awards, §§ 59, 61, and 62; Sturges, Commercial Arbitrations and Awards, § 153; Dunn & Dimond, Commercial Arbitration, § 35; Creswell, Handbook on Arbitrations, p. 56. And the law has been so stated and applied in very many cases. City of Omaha v. Omaha Water Co., 218 U.S. 180, 184, 30 S.Ct. 615, 54 L.Ed. 991, 48 L.R.A.,N.S., 1084; Lutz v. Linthicum, 8 Pet. 165, 8 L. Ed. 904; McLaurin v. McLauchlin, 4 Cir., 215 F. 345, 348; Continental Ins. Co. v. Garrett, 6 Cir., 125 F. 589, 592; Warren v. Tinsley, 5 Cir., 53 F. 689, 692; Roberts v. Consumers' Can Co., 102 Md. 362, 369, 62 A. 585; Wilson v. Boor, 40 Md. 483; Emery v. Owings, 7 Gill (Md.) 488, 496, 48 Am.Dec. 580; Day v. Hammond, 57 N.Y. 479, 486, 15 Am.Rep. 522.

■ The defendant urges the applicability here of the exception to the rule requiring notice, which is stated in the above quotation from 3 American Jurisprudence, that is, where the arbitration is really only a reference to experts to determine the intrinsic quality or value of an object upon their own knowledge as experts, notice is not necessary, as the reference is more an appraisal than an arbitration. The distinction is clearly made in the Omaha Water Case, supra. But the exception to the general rule does not apply here, as we are dealing with a true arbitration and not merely an appraisal. If the question submitted to the arbitrators had been limited, as the plaintiff desired, to a determination whether the quality was "off", based on a comparison of the contract sample and the inspection samples of the deliveries, the exception to the rule might have applied; but the defendant successfully insisted that the whole dispute, including the right to reject, should be arbitrated. This made the arbitration a general one, not limited to a mere appraisal of quality by experts.

■■ The defendant also points out that notice and opportunity to be heard can be waived by the parties to an arbitration.

This is true, and in some cases the facts may sufficiently establish a waiver, either express or implied. Here there was no such waiver, but on the contrary express insistence by the plaintiff on notice and right to be heard. The defendant further contends that an oral hearing of the plaintiff's president would have been only a formality in this case as the arbitrators had his written views before them in his correspondence with his arbitrator and the defendant. But it may not be presumed that the personal hearing of the plaintiff by the arbitrators would have been futile (see McLaurin v. McLauchlin, 4 Cir., 215 F. 345, 347) ; and the testimony of the defendant's president submitted on the motion, while somewhat argumentative, presented some relevant facts which were worthy of consideration by the arbitrators, particularly as bearing on the right of rejection of the deliveries, and the amount of the allowances for defective quality.

The prejudice to the plaintiff in the lack of notice is illustrated and emphasized by the facts relating to the arbitration of the third shipment of 200 bales. This was not included in the original agreement for the arbitration as it had not then arrived, but the plaintiff suggested that it also should be included, after it had arrived and been rejected. But owing to the lack of notice of the time of the arbitration, the plaintiff was deprived of a reasonable opportunity to present adequate samples of the shipment, drawn by his representative, for consideration along with the samples drawn for the defendant. Under these conditions the action of the arbitrators in including the third shipment in their award was clearly lacking in the fundamentals of due process.

The other reason advanced by the plaintiff for vacating the award is that the arbitrators made a clear mistake of law in deciding that the plaintiff did not have the right to reject the first two shipments, although the quality was "off." This goes to the heart of the whole controversy as to these shipments, on which no opinion is now expressed. And in view of the conclusion reached on the point of lack of notice and opportunity to be heard, it is not necessary to consider this last ground for setting aside the award.

The vacation of the award does not imply any personal criticism of the integrity or ability of the arbitrators in their particular line of business. They were serving without compensation, and doubtless acted according to their best judgment in a matter in which they thought they were giving their friendly services to both parties. They very probably thought of themselves as acting as experts to pass on the intrinsic quality of the respective samples submitted to them, and failed to appreciate that the scope of the questions made the arbitration a general · one which required notice and opportunity to be heard to be given to · the parties.

The whole award must be vacated for the lack of notice to the plaintiff and an opportunity to it to be heard. An order to that effect may be submitted.

If counsel desire to be heard with regard to the further procedure in the case, the matter can be set for an early day upon application therefor.