**HYMAN et al. v. POTTBERG'S EX'RS et al.**

**No. 209.**

Circuit Court of, Appeals, Second Circuit.

Jan. 23, 1939.

Adele I. Springer and John Tilney Carpenter, both of New York City, for appellants.

George Whitefield Betts, Jr., and Oscar R. Houston, both of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This cause comes up upon appeal from a decree in the admiralty, denying the application of certain claimants to a fund, whom we shall call the plaintiffs, to vacate or reduce awards made to certain other claimants. All claimants to the fund were either passengers, or owners of chattels, upon the S. S. "Morro Castle", which burned, off the Jersey Coast, on the evening of September 8, 1934. The owner and the charterer of the ship filed a joint limitation proceeding, in which after extended negotiations all parties interested agreed to the entry of a "final decree". The substance of this was as follows. The sum of $890,000, when paid, was to be in full of all liability of the owner and charterer to those claimants who accepted the settlement: the claims of all others were dismissed. An agreement of settlement, already made, was confirmed, and the owner and the charterer were directed to pay the sum mentioned—the "Morro Castle Fund"—to the Equitable Trust Company with "the same effect as though paid into court in full satisfaction of this decree, and deposited by the court as funds in court to be dealt with and distributed as provided in said settlement agreement." The risk and expense of defending against the claims of any claimants who had not accepted the settlement, if there were any, should be borne by those who had, up to 25% of their shares in the fund; and the owner and charterer were to be discharged from any such claims and indemnified for the expense of defending them. All suits against the owner and charterer were enjoined, "other than the liquidation out of the aforesaid Morro Castle Fund of claims in this limitation proceeding, as provided in said memorandum of settlement". The settlement is too long to state in detail, but those parts of it material to the issues before us are as follows. A committee of five proctors of the largest claimants was appointed, which all asserting claimants authorized "to act for them * * * in all matters in connection with this settlement * * * and to arbitrate, agree or otherwise determine the validity and amounts of all claims * * * and to make distribution of said Morro Castle settlement fund * * * All determinations of said Committees shall be final and binding * * * except that any claimant * * * may appeal * * * to the full Proctors' Committee. * * * Such appeal may be taken only within ten days after the mailing by the Committee to the proctor of the claimant * * * of the notice of the valuation or other determination put upon his claim * * * If such appeal is taken the full Proctors' Committee * * * may decrease, in-

264

crease or confirm the valuation or affirm or reverse or modify the determination, and such decision shall be final and binding upon the claimants". Both committees were empowered to make rules of procedure and did so. The rules of the committee of first instance provided that if "any dissent arise in the Committee on any question of substantive law * * * the Committee will, if it deems necessary, request Judge Knox or some other District Judge for his views on the law"; and that if the committee becomes "deadlocked" about a claim "such claim shall be submitted to Judge Knox * * * and in such case the Committee shall accept such decision as its own."

The members of both committees were all proctors for claimants to the fund, and therefore acted in a dual capacity; but although this was understood by all the claimants, no member took part in fixing the award of his client; and any charge against the committee for partiality must rest upon the theory that there was a covert, or perhaps only a half conscious, understanding between the members that the awards to their clients should be disproportionately large. The committee held a great many meetings, received a great deal of evidence and in the end made nearly 400 awards aggregating about $1,400,000, so that the dividend upon each claim was in the neighborhood of 60%. In some cases it kept minutes of its proceedings; in some it did not; but there was a separate file for each claim. After the awards had all been made, the plaintiffs moved the district judge—who had conducted the limitation proceeding, but who had had no part in the settlement—for various relief, including an inspection of all the documents in the possession of the committee: this last was granted, and the present appeal does not go to anything then denied. Later the plaintiffs moved again, this time that the awards be all "rescinded and impartially reviewed", or if not that, then that some thirty awards be "reviewed and modified by the Court on the ground that the majority members of the Morro Castle Committee made such awards unfairly and partially resulting in an inequitable disposition of the settlement fund". This motion was supported by voluminous affidavits, the upshot of which was that the members of the committee had acted with partiality in the manner above suggested; that they had refused to receive evidence in reduction of some of the challenged

awards; and that they had denied to the plaintiffs the privilege of an appeal to the proctors' committee from awards to other claimants. The two committees answered with voluminous affidavits, and the plaintiffs replied, until in the end more than 800 pages of assertion and counter-assertion had been piled up without any defined issues. (It is difficult to say whether the members of the committees meant to answer as arbitrators, or as proctors for their clients; and except upon the chance that they might be held liable for costs, they cannot be heard as arbitrators. However, since all represented claimants, the point is only one of form.) The judge examined this documentary mass, together apparently with the files of the disputed awards, and concluded, without making findings as required by Admiralty Rule 46½, 28 U.S.C.A. following section 723, that although some of the awards seemed to him too large, the plaintiffs had not proved that the committee had been partial. He therefore denied all the relief prayed.

The first question is as to the nature of the proceeding which ended in the order appealed from. The plaintiffs argue that the settlement was a step in the limitation proceeding, not an independent agreement to arbitrate; and that therefore the district court was not limited in its review by Title 9 of the U.S.Code, 9 U.S.C.A., but should have treated the awards like the report of a master. We do not agree. Even though the settlement were not an independent arbitration, but only an incident in the limitation proceeding, it was still an arbitration, and the judge's powers to review it were governed by Title 9, U.S.Code, 9 U.S.C.A. Admiralty Rule 43½ is plain as to this: when "any issue is referred by consent and the intention is plainly expressed in the consent order that the submission is to the commissioners or assessors as arbitrators, the court shall review the same only in accordance with the principles governing a review of an award and decision by an arbitrator". There cannot be the least doubt that the "submission" here was to the committee "as arbitrators"; and that concludes the matter, even though in addition they could be regarded as "commissioners or assessors", which seems somewhat unreal. Nor was it any less an arbitration because of the clause in the committee's rules of procedure that the members might in their

discretion consult a judge upon a point of law, and that he should decide any claim upon which they were deadlocked. Whatever would have been the effect of those clauses, had the committee resorted to the judge for either purpose, it did not do so, and the awards were in fact all made by the arbitrators unaided. Hence they can be reviewed only under Title 9 of the U.S. Code, 9 U.S.C.A.

█ It is clear that they are not open to attack under § 11; there was in them no mistake of calculation; the arbitrators did not go beyond the agreement; the awards were not imperfect in form. If they are not to stand, they must be vacated under § 10, and of the grounds specified in that section the only possible ones are (1) that the arbitrators were partial; (2) that they refused to receive evidence against the challenged claims; (3) that they denied an appeal from an award to anyone but the claimant himself. We reserve the first point until the last. It is of course true that in a limitation proceeding any claimant may contest the claims of all the rest (Admiralty Rule 52, 28 U.S.C.A. following section 723); indeed, no one else but the petitioner could contest them, unless the commissioner were to do so sua sponte. In the Southern District of New York this privilege must be exercised by filing a notice of the objection in writing. Admiralty Rule 35 of the Southern District of New York. In an arbitration like that at bar we shall assume that all the claimants have a similar privilege, if they choose to claim it: the fund, being known to be too small, each has an interest in reducing all awards but his own. However, none of the plaintiffs ever appeared before the committee to contest a claim, or asked that any evidence should be admitted against one. They do not, therefore, allege that the committee denied them personally this privilege; but that it did refuse the demand of one of its members, Levinson, that the committee should require certain documents to be produced by a claimant that might throw some light upon an award. It is at best very doubtful whether the failure to require the production of this evidence could be regarded as a refusal "to hear evidence pertinent and material" within § 10(c): however informal, an arbitration is a kind of trial, and the arbitrators do not ordinarily take sides. Nevertheless, the documents were in the hands of the claimant, and if they were in

fact of any importance, the committee should have called for them, unless there was some reason for not doing so. The same would be true of any other evidence refused under similar circumstances, though we have found none.

█ The next complaint is the denial of the privilege of an appeal to the proctors' committee to any claimant except from his own award. Although, as we have said, the plaintiffs had not contested any claims before the committee, when they got notice that the awards had been made, they filed a notice of appeal from all except their own. It was perhaps arguable that if the plaintiffs had contested any claim before the committee, they ought to have had notice of the award upon it, and the privilege of an appeal, though even that does a good deal of violence to the language of the settlement, which declared that the appeal must be taken within ten days after notice to the claimant or his proctor of the determination "of *his* claim". But even if that be not too great a strain on the words, certainly it would wrench them quite out of their meaning to say that when a claimant gets notice of the determination of his own claim, that is notice to all those who might have contested it, but who did not, that "*their*" claim has been allowed. Moreover, it would be a quite anomalous procedure to allow a party to appeal, who has never intervened in the controversy in the lower tribunal. We are very certain that the settlement did not mean that.

█ There remains only the question whether the committee acted impartially. That was an issue impossible to decide upon affidavits. It is true that § 6 of Title 9 U.S.Code, 9 U.S.C.A. § 6, apparently requires applications to vacate an award to be made as motions, and that motions are normally heard upon affidavits. That does not however preclude a trial: courts have always reserved to themselves the power to refer to a master a disputed issue of fact arising upon a motion—the Rules of Civil Procedure (§ 43(e), 28 U.S.C.A. following section 723c are no innovation in that regard—and here a reference was indispensable. The issue was not the correctness of the arbitrators' decisions, but the purity of their motives: it is they who were on trial, not the claims against the fund, although the merits of those might of course throw light upon their good faith. It was essential that they should

appear before the court, that their consciences should be searched by cross-examination, that they should be free to defend their conduct; and that the testimony should be sifted and arranged so that the conclusions from it should become intelligible. Out of the welter of asseveration and denial contained in the affidavits no reliable conclusion was possible, even though the files also were examined, for in many cases, as we have said, no minutes had been kept. Moreover it was not enough to consider only the challenged awards: the very substance of the issue of partiality is that the arbitrators had not dealt out even justice; their conduct in all the cases must be scrutinized to ascertain whether they had varied in the standards they applied. The case must therefore go back for trial before a judge or a commissioner upon the issue of partiality. If the plaintiffs win, all the awards must be vacated, and new arbitrators appointed, if the settlement is to be executed at all. It is true that § 10(e) provides that a court may "in its discretion" refer back a matter to the original arbitrators, after vacating their award; but obviously that would not be proper when the first award is vacated because of fraud or partiality; the arbitrators would then have shown themselves to be unfit to be judges, and it would be a clear abuse of discretion to trust them further. Whether new arbitrators must be selected by consent, or whether the court has power to appoint them under § 5 of Title 9, we need not now consider. Nor could we vacate only those awards in which the arbitrators may be proved to have been partial, trying them in court or by new arbitrators, and letting the rest stand. That would perhaps be possible where the fund was large enough to pay all in full, but not here. Each claimant consented to arbitration on the understanding that the fund should be distributed by a single procedure. If we should try judicially the claims of those whose awards were vacated, they could justly complain that they were subjected to other, and probably severer, standards of proof than the claims of those whose awards stood. And even those whose awards were not vacated might justly complain, for the more informal procedure of an arbitration need not inevitably result in their favor. Each claimant being interested in the claim of every other claimant, we cannot force some to arbitrate, and some to try their claims in court. And the same is equally true, even though the court could appoint new arbitrators under § 5: the claimants consented to a single set of arbitrators, not to several.

Should the issue of partiality be decided against the plaintiffs, it would remain to decide whether the committee should have called for the documents which Levinson demanded. The judge or commissioner will pass upon this, but if the plaintiffs succeed the other awards can stand. The claims concerned, and they alone, would be sent back to the arbitrators for a rehearing under § 10e, with instructions to consider the excluded evidence; they would not be disqualified as judges because they had made the mistake, and might make new awards.

Any costs of the hearing in the district court upon the issue of impartiality, or upon whether evidence was wrongly excluded—including the cost of a reference to a commissioner if there should be one—will be borne by the dividends of the plaintiffs, if they lose; and if they win, by those of the other claimants. Whether the arbitrators may be made liable "for willful misfeasance" under the concluding clause of the settlement, in case they are found guilty of partiality, we will not now decide.

In what we have said, we have implicitly decided that an application may be made to vacate an award under § 10, although the arbitration agreement itself contains no provision that judgment shall be entered upon it. In Seldner Corp. v. W. R. Grace & Co., D.C., 22 F.Supp. 388, Judge Chesnut suggested—though he did not decide—that as no award could be confirmed under § 9 unless the agreement provided for judgment, no motion to vacate or correct an award under §§ 10 and 11 would lie. An award, even when judgment cannot be summarily taken upon it under § 9, is a serious prejudice to the loser. The winner may sue upon it, and recover unless the loser can successfully attack it. Restatement of Contracts § 445; Williston § 1925. It is true that the loser may also file a bill in equity to set it aside. McLaurin v. McLauchlin, 4 Cir., 215 Fed. 345. But the statute was an effort to provide a convenient and speedy way to deal with arbitration in general, and it seems to us that to leave the loser to his existing remedies would be contrary to its spirit. There is certainly

nothing in the language which requires us so to decide; and we will not import into a remedial act such a limitation.

Order reversed; cause remanded.