## MURRAY OIL PRODUCTS CO., Inc., v. MITSUI & CO., Limited.

District Court, S. D. New York.

April 17, 1944.

Copal Mintz, of New York City, for plaintiff.

Putney, Twombly & Hall, of New York City (Lemuel Skidmore and Stephen J. Lucey, both of New York City, of counsel), for defendant.

HULBERT, District Judge.

There are three motions:

1. Plaintiff moves for an order confirming an arbitration award made by the Committee on Vegetable Oils, Waxes and Fats of the New York Produce Exchange and for an order directing the clerk of this court to enter judgment thereon.

2. The defendant moves for an order discontinuing the action and directing that the warrant of attachment and levies made thereunder, by the Sheriff of New York County, be vacated and annulled and that the Sheriff deliver over and release the property levied upon to the defendant.

3. Plaintiff makes a cross-motion for an order directing that the property attached by the Sheriff of New York County may be resorted to and levied upon in execution and satisfaction of the judgment which it seeks to have entered.

The facts in this case are unusual and will be stated as concisely as possible.

Mitsui & Co. Ltd., is a corporation organized under the laws of the Empire of Japan and had applied to and received a certificate from the Secretary of State of the State of New York authorizing it to do business in this State.

At the time of the attack on Pearl Harbor Dec. 7th, 1941, and for some time prior thereto, it had an office at 350 Fifth Avenue, New York, New York, where it was engaged in business as an importer and exporter of merchandise.

Prior to July 26, 1941, it had in its employ one Roy N. Figueroa, acting in the capacity as auditor for the company. On July 26th, 1941, Mr. Figueroa was appointed Comptroller and continued in that capacity until, with the outbreak of the war on December 8, 1941, the office was taken over by the United States Treasury Department, and Figueroa, as agent and attorney in fact for Mitsui & Co. Ltd., was placed in charge of the liquidation of the business under the supervision of the U. S. Treasury Department until on or about August 17, 1942, when the Alien Property Custodian of the United States issued an order vesting in himself as such Alien Property Custodian, and upon the terms and for the purposes therein stated, all property of any nature whatsoever owned or controlled by, payable or deliverable to, or held on behalf of, or on account of, or owing to Mitsui & Co. Ltd., located at the various places in the United States specified in said order, including the City of New York.

Shortly after the issuance of the vesting order the office was closed and the books and records moved to the office of the Alien Property Custodian at 120 Broadway, New York, N. Y.

On or about the 11th day of June, 1941, at the City of New York, the plaintiff and defendant had entered into a contract in writing "wherein and whereby the defendant agreed to sell to the plaintiff, and the plaintiff agreed to buy from the defendant, 300 tons, of 2,240 lbs. each, 10% more or less, seller's option, of Perilla Oil in Bulk, June 1941 shipment from Dairen, Manchuria, at $11 per 100 lbs., c. i. f. New York, N.Y., the quality of said oil to be 'F.A.Q' Free Fatty Acid Maximum 2%, moisture and impurities maximum $\frac{1}{2}$%, guaranteed non-break at 600° F."

On or about Dec. 17, 1941, plaintiff brought an action in the Supreme Court of the State of New York, County of New York, against the defendant to recover damages for alleged breach of said contract. The summons and complaint, pursuant to Section 217 of the General Corporation Law of the State of New York, Consol.Laws N.Y.C. 23, were served upon the Secretary of State of the State of New York, who forwarded the same to the defendant's New York Office, and the summons and complaint were then sent by officials of the United States in charge of such office to Messrs. Putney, Twombly & Hall, New York attorneys, who, on a motion for a stay of the action and an extension of time to answer until after the termination of the war, represented to the court that they had been counsel to the defendant for about 25 years. This motion was granted. 178 Misc. 82, 33 N.Y.S. 2d 92, affirmed 263 App.Div. 979, 34 N.Y.S. 2d 137. Meanwhile, however, on Dec. 22, 1941, a warrant of attachment was issued in the action, to the Sheriff of New York County, pursuant to which he made a levy upon accounts of the defendant in each of two banks in the Borough of Manhattan, City of New York. Thereafter the State Court made an order terminating the stay theretofore granted. Subsequently, on application of the defendant's attorneys the case was removed to this court and issue was joined, the defendant pleading in its answer, among other things, that the contract upon which the action was predicated provided for arbitration and applied for and obtained an order on Feb. 1, 1943, directing that all proceedings in this action be stayed during the continuance of the War between the United States of America and Japan, other than such as might be required to preserve plaintiff's security, and enjoining the plaintiff accordingly. But, on Oct. 15, 1943, an order was made on motion of the plaintiff, vacating said order of Feb. 1, 1943, to the extent of permitting and directing a separate trial of the issues of fact and/or law, which could be determined without recourse to evidence procurable only in Manchuria or Japan, and further directing that this cause be restored to the appropriate trial calendar of this court, and upon the trial and determination thereof that such judgment or further order should be entered as might be appropriate in the light of such determination and the proceedings theretofore had.

Thereafter, the defendant moved under the provisions of 9 U.S.C.A. § 3, for a stay of the trial until arbitration had been had of the matters in dispute between the parties in accordance with the terms of the contract dated May 5, 1941.

An order was made and entered on Dec. 10, 1943, denying the motion without prej-

udice to the determination and disposition at the trial of the issues as to whether the contract dated May 5, 1941, contained an arbitration clause and, if so, the text thereof, and the defendant's right under Title 9 of the United States Code Annotated to compel arbitration and to a stay during the pendency thereof.

Thereafter the trial came on before Honorable J. Foster Symes, United States District Judge, sitting in this court, without a jury, on the 7th and 8th days of February 1944, and the court having taken the allegations and proofs of the parties upon the specific issue as to whether there was a contract of arbitration, found that the contract between the parties dated May 5, 1941, contained an arbitration clause, and "the text of said clause is as contained in the uniform contract set forth in Rule 6, Section 1 of the Rules Regulating Business Among Members of the New York Produce Exchange in Vegetable Oils, Waxes and Fats Not Otherwise Provided For, adopted July 7, 1921 and effective August 1, 1921," and having further found that the defendant had not waived its right to arbitration under the provisions of the contract, made an order dated Feb. 11, 1944, directing the parties to proceed with the arbitration of the disputes arising out of said contract dated May 5, 1941, before the Committee on Vegetable Oils, Waxes and Fats of the New York Produce Exchange in accordance with the terms of said contract, and in accordance with the rules of the New York Produce Exchange, and further

"That this action be, and hereby is, permanently stayed, except as to proceedings relating to the warrant of attachment herein and the property attached thereunder."

, The arbitration proceeded as directed before the Committee on Vegetable Oils, Waxes and Fats of the New York Produce Exchange consisting of Messrs. M. B. Snevily, C. T. Weihman, M. F. Austin, J. E. Falkingham and J. F. Parry, or to a majority of them, on March 13, 1944, and an award in writing was made and signed by Messrs. Weihman, Austin and Parry:

"The Committee holds that Mitsui & Co. Ltd., shall pay Murray Oil Products Co. Inc., the sum of $21,840.00. Arbitration fees amounting to $75.00 shall be paid by Mitsui & Co. Ltd."

There is no challenge to the award, but the defendant resists the motion for the entry of judgment thereon upon the ground that the contract of May 5, 1941, providing for arbitration does not contain such an authorization. 9 U.S.C.A. § 9, specifically provides:

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court."

This court had occasion to pass upon a similar objection in the Matter of the petition of Agwi Navigation Company and New York and Cuba Mail Steamship Company for Limitation of Liability, Morro Castle Proceeding, Clerk's file A 112–156 (opinion dated May 4, 1940) and denied the motion to confirm, citing Lehigh Structural Steel Co. v. Rust Engineering Co., 61 App. D.C. 224, 59 F.2d 1038, 1039, and distinguished Hyman v. Pottberg's Executors, 2 Cir., 101 F.2d 262. See also Seldner Corp. v. W. R. Grace & Co., D.C., 22 F.Supp. 388.

Of course each case differs as the facts differ, and in the case at bar this court is impelled to distinguish its own interpretation of the effect of Section 9 in the Morro Castle case.

The plaintiff sued on the contract but ignored the provision for arbitration. The defendant plead the arbitration clause as a defense. It sought and forced the

356

plaintiff to a compliance and stayed the action meanwhile.

It seems inconceivable that a defendant may deprive the plaintiff, or suspend the enforcement, of its civil rights, to a court trial of a justiciable controversy, and after having been defeated in an arbitration proceeding which the defendant elected to pursue, avoid the consummation of the natural right to which the plaintiff would have been entitled if it had been permitted to proceed with the trial of the action instead of being required by the court, upon the motion of the defendant, to arbitrate.

The facts here clearly spell out an implied intent and agreement on the part of the defendant to abide by the result of arbitration and the entry of judgment when the right to the entry of judgment on trial to the court, with or without a jury, was so taken from it.

The defendant further urges that since it is a nonresident the court is without power to enter judgment because notice of the application has not been "served by the marshal of any district within which the adverse party may be found in like manner as other process of the court."

That argument seems to be wholly without merit, for the reason that the defendant was already before the court on due process and arbitration having been compelled upon its motion it waived the provision of the statute relied upon, as in part above quoted.

The entry of judgment will, of course, terminate the action, but the vacature of the warrant of attachment cannot properly be disposed of now. Ordinarily the judgment would be satisfied in whole or in part out of the monies attached, but, it appears, they have passed into the possession of the Alien Property Custodian. It is conceded that it will be necessary for the plaintiff to file a claim with him. The judgment will be evidence of the debt.

It may be that the Alien Property Custodian has sufficient assets in his possession to satisfy all of the creditors of Mitsui & Co. Ltd., in full. On the other hand the liabilities of the defendant, at least the claims which have been or may be filed with the Alien Property Custodian, may exceed the assets in his possession.

The plaintiff should be entitled to litigate any right to a preference which it claims by reason of the attachment and levies thereunder. That issue has been created by the operation of the Trading with the Enemy Act, 50 U.S.C.A. Appendix § 1 et seq.

The facts before the court are insufficient to make a determination, and the Alien Property Custodian is not before the court. Therefore, it may be to the interest of the defendant to seek and procure, if possible, some protective provision in the judgment which will insure such a final disposition of the monies held under the attachment levies as will protect the claims of the other creditors of the defendant.

An order may be submitted confirming the award, and directing the entry of judgment, and the court will hear the parties upon the settlement of that order regarding any suggestions that either of them may desire to propose, particularly with respect to the warrant of attachment and the levies thereunder and any protective provision that will insure to the defendant an equitable distribution of its assets. Notice of settlement of such order should be given to the Alien Property Custodian in keeping with the spirit of the provisions of Section 10(g) of the Trading with the Enemy Act.